Gregg A. Rapoport (SBN 136941)
Law Offices of Gregg A. Rapoport, APLC
135 West Green Street, Suite 100
Pasadena, California 91105
Tel. 626-585-0155; Fax 626-585-0355
gar@garlaw.us

Attorney for Plaintiffs
SPICY BEER MIX, INC. and GREGORY MURKIJANIAN, SR.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SPICY BEER MIX, INC. a California corporation, and GREGORY MURKIJANIAN, SR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,<br><br>Defendants. | Case No. CV 15-3361<br><br>**COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT; AND**<br><br>**2. TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs SPICY BEER MIX, INC. ("SBMI") and GREGORY MURKIJANIAN, SR. ("Murkijanian") (together, "Plaintiffs"), complains of Defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale" or "Defendant") and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiffs and Defendant and there is more than $75,000 in controversy in this action, exclusive of interest and costs.

-1-
COMPLAINT

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this District. Among other things, Defendant sold Plaintiffs insurance in this District, the Policy was delivered to Plaintiffs in this District, and the underlying action for which Defendant owed a defense to Plaintiffs was pending in this District.

3. This Court has personal jurisdiction over Scottsdale based upon its minimum contacts in this state, as well as by reason of having entered into the Policy in this state, and pursuant to the Service of Suit Clause within the Policy, as defined below.

## NATURE OF THE ACTION

4. This is an action for damages based on Scottsdale's breach of an insurance contract issued to Plaintiffs, and Scottsdale's tortious breach of the implied covenant of good faith therein.

## THE PARTIES

5. Plaintiff SBMI is a California corporation with its principal place of business in the City of Whittier, California.

6. Plaintiff Murkijanian is an individual with his residence within this District and is an officer, director, and employee of SBMI.

7. On information and belief, Scottsdale is an Ohio corporation with its principal place of business in State of Arizona.

8. Whenever herein an act or omission of Defendant is alleged, the allegation shall be deemed to mean and include an allegation that Defendant acted or omitted to act through its authorized officers, directors, members, managers, agents, servants, and/or employees, acting within the ordinary course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporate or business entity.

# GENERAL ALLEGATIONS

### A. The Scottsdale Policy

9. On or about December 9, 2011, Defendant issued to SBMI General Liability Policy No. CPS1473075, effective November 30, 2011 through November 30, 2012 (the "2011 Policy"). A true and correct copy of the Policy is attached hereto as Exhibit A.

10. On or about January 17, 2013, Defendant renewed the 2011 Policy, effective November 30, 2012 through November 30, 2013, and assigned the number CPS1706954 to the Policy as renewed (the "Renewed Policy"). A true and correct copy of the Renewed Policy is attached hereto as Exhibit B.

11. Both the 2011 Policy and the Renewed Policy (together, the "Policy") provided Plaintiffs up to $2,000,000 in indemnity and defense coverage, with no deductible, against liability claims for "personal and advertising injury" caused by an offense arising out of SBMI's business, and committed within the "coverage territory" during the policy period.

12. The Policy further covered Additional Insureds, including SBMI's manufacturing vendor, Premier Foods, LLC.

13. Pertinent language from the Policy's main "Commercial General Liability Coverage Form," form CG 00 01 12 07, includes:

> COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY
>
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. ***

2. Exclusions

This insurance does not apply to:

\*\*\*

i. "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

\*\*\*

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\*\*\*

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

      f.    The use of another's advertising idea in your "advertisement"; or

      g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**B.    Background of the Underlying Action**

14.    During the time the Policy was in force, SBMI manufactured and sold a disposable "spicy beverage cup" (or "Michelada Cup"), consisting of a disposable styrofoam or plastic beverage cup that is rimmed with and contains a spice mixture for a consumer's use with beer.

15.    During the time the Policy was in force, one of SBMI's competitors was New Castle Beverage, Inc. ("NCBI"), which sold a product featuring a similarly spiced rim. SBMI's and NCBI's products, respectively, are shown below:

 

16.    During the time the Policy was in force, both SBMI and NCBI sold their respective Michelada Cup products online to consumers and both directly and indirectly to retailers who advertise the products by displaying them on their shelves to consumers.

17. In October 2010, Monugian applied for a U.S. Patent for "The ornamental design for a beverage holder," based on a design depicting a disposable cup with a spiced rim, as shown below:



18. In January 2012, Monugian was issued U.S. Patent No. 652,681 for the spiced rim design depicted above.

19. At or about that time, counsel for NCBI sent a letter to SBMI's distributor, Triangle Distributing Co., demanding that it cease and desist from distributing SBMI's Michelada Cup products, based on his client's "patent application covering the placement of mix around the external rim portion of the container."

20. NCBI also sent cease and desist letters to SBMI's retail customers, threatening them with patent and copyright infringement litigation to induce them to remove SBMI's products from their shelves and to display and sell New Castle's competing products exclusively. NCBI claimed in these letters to own the patent rights to "the salted rim cup," and to be "the owner of all copyrights in the text and graphics, including the color," of its products.

21. SBMI's counsel wrote to NCBI's counsel and to Monugian, asserting that the design patent was invalid as functional, and demanding that New Castle stop threatening SBMI's customers with litigation.

22. In December 2012, New Castle sent a letter to SBMI and Murkijanian, now asserting for the first time that they had misappropriated New Castle's trade secrets "in relation to a formula and process used to adhere a mixture to the rim" of SBMI's products.

23. On March 7, 2013, NCBI and its president and sole owner, Ricky Monugian ("Monugian"), (together, "New Castle"), filed an action in the Los Angeles County Superior Court, styled as *New Castle Beverage, Inc. and Ricky Monugian v. Premier Foods, LLC, Spicy Beer Mix, Inc. and Gregory Murkijanian, Sr., et al.*, Case No. GC051058 (the "Underlying Action").

24. On March 13, 2013, New Castle filed a patent infringement action against SBMI and its manufacturer, Premier Foods, LLC, in this Court (Case No. CV-13-02055-SJO(JEMx) (the "New Castle Patent Action").

25. In the New Castle Patent Action, New Castle alleged that SBMI and Premier were using and selling "beverage containers, which infringe the claim of the 681 patent." New Castle demanded an "accounting for damages" and other relief.

26. On May 7, 2013, NCBI once again threatened to sue Triangle Distributing Co. for patent infringement.

27. On May 31, 2013, SBMI demanded that New Castle dismiss the New Castle Patent Action, asserting that the design patent at issue was invalid based upon functionality of the design, among other reasons, and threatening to bring a counterclaim to establish its invalidity. SBMI further demanded that New Castle cease threatening SBMI's customers and distributors.

28. On June 5, 2013, New Castle voluntarily dismissed its patent infringement action without prejudice, but continued to threaten SBMI's customers and distributors.

29. On January 30, 2014, SBMI, Murkijanian, and Premier Foods, LLC filed an action in this Court (Case No. CV-14-720-SJO(JEMx)) (the "SBMI Patent Action") against New Castle and Monugian, seeking, *inter alia*, a declaratory order invalidating Monugian's patent for the spiced rim cup design.

30. In order to avoid having the design patent declared invalid, in March 2014, counsel for New Castle sent an irrevocable and unconditional covenant not to sue to SBMI, Murkijanian, and Premier Foods, LLC for infringement of Monugian's design patent.

31. On August 1, 2014, the district court dismissed the invalidity claims in the SBMI Patent Action, on grounds that New Castle's covenant not to sue extinguished the "actual controversy" which had afforded the Court jurisdiction to issue a declaratory order.

C. **New Castle's Allegations in the Underlying Action**

32. On June 21, 2013, New Castle filed a First Amended Complaint (the "FAC") in the Underlying Action. A true and correct copy of the FAC is attached hereto as Exhibit C.

33. In the Underlying Action, Monugian asserted that he had developed "a spicy beverage cup product containing a spicy mix around the perimeter of the upper portion of the rim of the cup and inside the cup called, 'Micheladas Antojitos'," and that he had created, developed, and designed certain alleged trade secrets used in the manufacture of that product.

34. In the Underlying Action, New Castle alleged that Monugian owned "all trade secrets related to 'Micheladas Antojitos', a spicy beverage cup with drink mix placed around the perimeter of the upper-portion of the cup, and inside of the

cup, and at all times mentioned herein, granted an exclusive license of those trade secrets to Plaintiff, New Castle." (Exh. C - FAC ¶11.)

35. New Castle claimed that NCBI was "the leading manufacturer of the spicy beverage cup product," and that the alleged trade secrets (owned by Monugian and licensed to NCBI) had given NCBI a competitive advantage by permitting mass production and "commercially feasible manufacture" of its product. (Exh. C - FAC ¶¶12-13.)

36. As alleged, these trade secrets included "the process of applying a secret solution to the inner and outer surfaces adjacent the lip of a beverage cup to permit a first mixture of spices to adhere to those surfaces," and "an apparatus specially designed by Ricky Monugian that distributes the secret solution to the inner and outer surfaces adjacent the lip of the beverage cup." (Exh. C - FAC ¶14.) New Castle claimed that this "specially designed machine . . . enables production to be increased by a factor of eight times over that of the process of hand-coating the beverage containers and give [New Castle] a significant price advantage over competitors."

37. In addition, New Castle claimed in the Underlying Action that its "secret solution," or "adhesion formula" constituted a separate trade secret which gave New Castle's spiced beverage cup product a "unique flavor and extended shelf-life."

38. In the Underlying Action, Monugian asserted that NCBI protects its trade secrets by, among other things, "keeping the trade secret formulas locked in a safe and limited its access to myself alone."

39. New Castle alleged in the Underlying Action that SBMI and Murkijanian had misappropriated the alleged trade secrets by way of NCBI's former employee, Robert Montiel, that they had disclosed the secrets to Premier Foods, LLC, that they and Premier were using the same "process," "apparatus" and "formula" to make competing products "similar to 'Micheladas Antojitos'," and

that they otherwise lacked "the know how, technique, and sequence to put it together." (Exh. C - FAC ¶¶17-24, 26- 27, 39.)

40. New Castle then alleged that, "This wrongful disclosure and use has manifested itself, by Defendants developing and/or modifying their products by incorporating Plaintiffs' confidential, proprietary, trade secrets." (Exh. C - FAC ¶28 [emphasis added].)

41. In the Underlying Action, New Castle alleged that it had suffered "actual damages in an amount in excess of $75,000," and prayed that it be "awarded damages for the actual loss it has suffered in an amount to be proven at trial," as well as "damages for unjust enrichment," a "reasonable royalty," and disgorgement of "all improper benefits, profits, and/or gains." (Exh. C - FAC ¶31 and p. 11.)

42. New Castle further sought an order enjoining SBMI, et al. from further "using and profiting from" the alleged trade secrets. (Exh. C - FAC ¶¶29, 41 and p. 10.)

43. SBMI and Murkijanian retained defense counsel for themselves and Premier Foods, LLC in the Underlying Action, as well as trademark counsel in the SBMI Patent Action.

44. In its discovery efforts in the Underlying Action, New Castle vigorously sought production from SBMI and Premier Foods, LLC of records showing the revenue generated by SBMI's sales of its Michelada Cup products made with the alleged trade secret process and apparatus, and asserted in summary judgment papers that such records would constitute "evidence to prove Plaintiffs' damages for unjust enrichment."

45. In December 2014, the Underlying Action was settled under confidential terms and, on December 29, 2014, was dismissed with prejudice upon the parties' stipulation.

-10-
COMPLAINT

### D. The Underlying Action Was Covered Under the Policy

46. New Castle's claim in the Underlying Action reasonably should have been understood by Scottsdale as a claim for damages caused by SBMI's use of the spiced rim design (a form of advertisement), by means of its use of New Castle's production methods (i.e., its "advertising ideas" -- a term undefined in the Policy). As such, the claim arose from the alleged "use of another's advertising idea" in Plaintiffs' "advertisement," rather than the infringement of copyright, patent, trademark, trade secret or other intellectual property rights, and no Policy exclusion applied.

47. New Castle's claim reasonably should have been further understood as a claim for damages caused by SBMI's infringement of New Castle's spiced rim trade dress (i.e., the total image and overall appearance of their Michelada Cups), in SBMI's "advertisement" (i.e., its use of the spiced rim design).

48. New Castle's claim reasonably should have been understood as a claim for damages caused by SBMI's publication of material that violated Monugian's "right of privacy" (a term undefined in the Policy), i.e., his right to keep private his alleged trade secrets.

49. Under these theories -- which Plaintiffs amply expressed to Scottsdale -- it was reasonable to find actual or potential coverage pursuant to Coverage B, the Personal and Advertising Injury provisions of the Policy.

### E. Plaintiffs' Tender of the Underlying Action to Scottsdale and Its Denial of Coverage

50. On January 31, 2014, Plaintiffs tendered the Underlying Action to Scottsdale on behalf of themselves as well as Premier Foods, LLC as an additional insured, provided information regarding the Underlying Action, and asked Scottsdale to advise as to what specific documentation it required to complete its investigation of the claim.

51. At no time did Scottsdale undertake further investigation of Plaintiffs' coverage claim by requesting pleadings, discovery, or other documents, nor additional information regarding the nature of New Castle's claims in the Underlying Action.

52. Rather, on February 20, 2014, Scottsdale denied that even potential coverage arose from the Underlying Action, and refused to indemnify or defend Plaintiffs or Premier Foods, LLC in the Underlying Action.

53. In July 2014, and again in early November 2014, Plaintiffs informed Scottsdale that they believed it was possible to settle the Underlying Action for a relatively modest amount compared to previous demands from New Castle -- and possibly for less than the costs of defense -- but that Scottsdale's participation in settlement discussions would be necessary.

54. In response, Scottsdale simply stated that its position remained unchanged, and did not agree to participate in settlement discussions with New Castle. Scottsdale failed to reasonably consider whether, in light of New Castle's alleged injuries and the probability of Plaintiffs' liability, the ultimate judgment would likely exceed the amount of New Castle's settlement demands.

55. As a result of Scottsdale's outright denial of coverage, Plaintiffs were forced to bear the costs of defense until the Underlying Action and the SBMI Patent Action eventually settled, without Scottsdale's assistance, in late December 2014.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

56. Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully in this paragraph.

57. The Policy was a valid contract between Plaintiffs and Scottsdale.

58. Plaintiffs have fully performed all of their material obligations under the Policy, or such obligations were excused.

59. Under the express terms of the Policy, Scottsdale had a duty to defend Plaintiffs and Premier Foods, LLC in the Underlying Action.

60. Scottsdale has breached the express terms of the Policy by denying that the potential for coverage exists and by refusing Plaintiffs' request for a defense.

61. Under the implied covenant of good faith and fair dealing in the Policy, Scottsdale had a contractual duty not to do anything which would injure Plaintiffs' right to receive the benefits of the agreement, to give at least the same level of consideration to Plaintiffs' interests as it gave to its own interests, and to do everything that the Policy presupposed that Scottsdale would do to accomplish its purpose; more specifically, Scottsdale owed Plaintiffs a duty to conduct a thorough investigation of Plaintiffs' claim for coverage and to seek facts that would support Plaintiffs' claim, to defend Plaintiffs and Premier Foods, LLC in the Underlying Action, and to attempt in good faith to effectuate, on a timely basis, a reasonable, fair, and equitable settlement of a claim in which liability had become reasonably clear, within policy limits

62. On information and belief, instead of doing so, Scottsdale determined before conducting any meaningful or objective investigation of Plaintiffs' claim that no coverage existed, and Scottsdale did so in order to avoid defending and potentially indemnifying Plaintiffs and Premier Foods, LLC against claims in the Underlying Action which might have exhausted the limits of the Policy.

63. Scottsdale breached the implied covenant by:
   a. Ignoring information offered and provided by Plaintiffs to support the coverage claim;
   b. Ignoring New Castle's reasonable settlement demands for less than Policy limits;
   c. Refusing Plaintiffs' request that Scottsdale participate in settlement discussions with New Castle;

       d. Failing to recognize potential coverage, and instead, adopting a coverage position on grounds it knew or should have known were not reasonably supported by, and were contrary to, the terms of the Policy, applicable law, insurance industry custom and practice, and public policy; and

       e. By otherwise acting as alleged above.

64. As a direct and foreseeable result of Scottsdale's breaches of contract, Plaintiffs suffered damages, including but not limited to payment of defense fees and costs incurred by them or incurred by Premier Foods, LLC and owed and/or paid by Plaintiffs, since the date of tender, in an amount to be proven at trial, but in no event less than $250,000.

## SECOND CLAIM FOR RELIEF

**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)**

65. Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully in this paragraph.

66. Under the implied covenant of good faith and fair dealing in the Policy, Scottsdale had a legal duty not to do anything which would injure Plaintiffs' right to receive the benefits of the agreement, to give at least the same level of consideration to Plaintiffs' interests as it gave to its own interests, and to do everything that the Policy presupposed that Scottsdale would do to accomplish its purpose; more specifically, Scottsdale owed Plaintiffs a duty to conduct a thorough investigation of Plaintiffs' claim for coverage and to seek facts that would support Plaintiffs' claim, to defend Plaintiffs and Premier Foods, LLC in the Underlying Action, and to attempt in good faith to effectuate, on a timely basis, a reasonable, fair, and equitable settlement of a claim in which liability had become reasonably clear, within policy limits

67. On information and belief, instead of doing so, Scottsdale determined before conducting any meaningful or objective investigation of Plaintiffs' claim

that no coverage existed, and Scottsdale did so in order to avoid defending and potentially indemnifying Plaintiffs and Premier Foods, LLC against claims in the Underlying Action which might have exhausted the limits of the Policy.

68. Scottsdale acted in bad faith and in conscious disregard of Plaintiffs' rights by:

    a. Ignoring information offered and provided by Plaintiffs to support the coverage claim;

    b. Ignoring New Castle's reasonable settlement demands for less than Policy limits;

    c. Refusing Plaintiffs' request that Scottsdale participate in settlement discussions with New Castle;

    d. Failing to recognize potential coverage, and instead, adopting a coverage position on grounds it knew or should have known were not reasonably supported by, and were contrary to, the terms of the Policy, applicable law, insurance industry custom and practice, and public policy; and

    e. By otherwise acting as alleged above.

69. In breach of the implied covenant of good faith and fair dealing, Scottsdale did the things and committed the acts alleged above for the purpose of consciously withholding from Plaintiffs the rights and benefits to which Plaintiffs are entitled under the Policy, and without considering Plaintiffs' interests as least to the same extent as it considered its own interests.

70. Scottsdale's actions are inconsistent with Plaintiffs' reasonable expectations, are contrary to established claims practices and legal requirements, and constitute bad faith.

71. As a direct and proximate result of Scottsdale's acts, as alleged above, Plaintiffs have been damaged in an amount in excess of the jurisdictional minimum of this Court. These damages include the amount of defense fees and costs

incurred by Plaintiffs or incurred by Premier Foods, LLC and owed and/or paid by Plaintiffs, since the date of tender, in an amount to be proven at trial, but in no event less than $250,000.

72. Further, Plaintiffs are entitled to recover all attorney's fees and expenses that it reasonably has incurred, and is incurring, in their efforts to obtain the benefits due under the Policy that Scottsdale has wrongfully withheld, and is withholding, in bad faith.

73. Plaintiffs are further entitled to prejudgment interest.

74. Scottsdale and its employees, authorized by its officers, directors, or managing agents, undertook this conduct intentionally, oppressively, fraudulently, maliciously and with reckless disregard for Plaintiffs' welfare, always placing their own interests in maximizing profits ahead of Plaintiffs' welfare and of Plaintiffs' rights and entitlement to be dealt with in a lawful manner in these transactions. Scottsdale should thus be made to pay punitive damages in an amount sufficient to punish it, to deter it in the future from engaging in the conduct and omissions complained of herein, and to make an example of it in order to deter similar conduct.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request judgment in their favor and against Defendant Scottsdale as follows:

1. On the First Claim For Relief, for an award of damages according to proof at trial, but in no event less than $250,000, plus prejudgment interest thereon.

2. On the Second Claim For Relief, for an award of damages according to proof at trial, but in no event less than $250,000, plus interest thereon, plus reasonable attorney's fees incurred in obtaining the benefits due under the Policy, plus punitive damages in an amount to be determined at the time of trial.

3. For such other, further and/or different relief as may be just and proper.

Dated: May 5, 2015

          LAW OFFICES OF GREGG A. RAPOPORT, APLC

          s/ *Gregg A. Rapoport*
          Gregg A. Rapoport

          Attorney For Plaintiffs
          SPICY BEER MIX, INC. and GREGORY MURKIJANIAN, SR.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in this action.

Dated: May 5, 2015

          LAW OFFICES OF GREGG A. RAPOPORT, APLC

          s/ *Gregg A. Rapoport*
          Gregg A. Rapoport

          Attorney For Plaintiffs
          SPICY BEER MIX, INC. and GREGORY MURKIJANIAN, SR.